UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUCHELL MAGEE,

Plaintiff,

v.

MATHEW CATE,

Defendant.

No. 2:13-cv-00120-DAD

ORDER

Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

I. In Forma Pauperis Application

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). However, pursuant to a court order issued on July 19, 1988 in a prior action filed in this court, In re Magee, Civ S 88-0656-LKK (E. D. Cal. 1988), plaintiff must seek leave of court in order to proceed in forma pauperis in this matter.[1] The 1988 order requires plaintiff to "certify that the claims presented are new claims never before raised and disposed of on the merits by any federal court" and to "show that denial of leave to file would be prejudicial because the new

[1] Plaintiff did attach a copy of the court's 1988 order to his motion to proceed in forma pauperis. (ECF No. 2 at 4-5.)

claims could not be properly joined by amendment to any previously filed action." (ECF No. 2 at 4.) In his current motion, plaintiff certifies under penalty of perjury that the claims presented in his current complaint are new claims that have not been decided on the merits by any federal court and that those claims "cannot be properly joined by amendment to ant previously filed action." (ECF No. 2 at 1-2.) The court finds that plaintiff's certifications are sufficient to meet the requirements of the July 19, 1988 order. Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By separate order, the court will direct the appropriate agency to collect twenty percent of the preceding month's income credited to plaintiff's prison trust account and forward it to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Erickson v. Pardus, 551 U.S. 89, 92 (2007) (quoting Bell Atlantic, 550 U.S. at 555, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 94, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

III. Plaintiff's Claims

In his complaint, plaintiff alleges three "causes of action" against Matthew Cate, the Director of the California Department of Corrections and Rehabilitation ("CDCR") who is the sole named defendant in this action. In his first cause of action, plaintiff alleges that Director Cate refused to correct plaintiff's overly restrictive classification score, which qualified plaintiff for placement in level-four custody. (Complaint (ECF No. 1) at 3.) According to plaintiff, if his score had been corrected, he would be classified as a level three inmate or to an even lower security classification. (Id.) Plaintiff further alleges that as a result of being classified as a level four inmate, he cannot meet court deadlines, which has resulted in him being denied relief in the lawsuits he has pursued. (Id.) Plaintiff alleges that his classification score has also caused the Parole Board to find him unsuitable for parole. (Id.) Plaintiff claims that defendant Director Cate has documents showing that his office exercises control over plaintiff's custody placement, "and no lower rank staff may change custody without Director's Review Board approval." (Id. at 4.) Plaintiff alleges that Director Cate "deliberately and intentionally" used fraudulent documents to prevent plaintiff from receiving a reduction in his custody score. (Id.) According to plaintiff, this faulty custody score was used to obstruct him from receiving more than forty years' worth of work time credits, has obstructed plaintiff's release on parole, and caused him to be held in

conditions that denied him his visitation rights. (Id.) Plaintiff claims that Cate's actions were done in retaliation for plaintiff's filing of legal claims against Cate and others for violations of plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights. (Id. at 4, 7.)

In his second cause of action, plaintiff alleges that Cate allowed for plaintiff's retaliatory transfer based on an overly restrictive classification score to go uncorrected. (Id. at 5.) Plaintiff claims that from 2011 through January 2013, Cate and his agents denied plaintiff's inmate grievance that he had been subject to a retaliatory transfer from a Corcoran Prison work program to more restrictive custody on October 1, 2008 on the basis of false information. (Id.) Plaintiff alleges further that Cate has caused lower ranking correctional officers to not correct plaintiff's classification score out of a "fear to correct what theor [sic] supervisor falsely pretends to be correct." Id. Plaintiff claims that Cate knows that plaintiff's classification score is incorrect and that the failure to correct it constitutes retaliation against plaintiff's exercise of his First Amendment rights and is "in violation of [a] liberty interest guaranteed by the Fourteenth Amendment of the United States Constitution." (Id.)

In his third cause of action, plaintiff alleges that Cate and those under Cate's supervision refused to transfer plaintiff to a lower level of custody despite being informed in 2012 by the classification committee at Corcoran Prison that plaintiff's classification level needed to be lowered. (Id. at 6.) Plaintiff further alleges that Cate also knows that plaintiff's custody score precludes him from being found suitable for parole release by the Parole Board because plaintiff's previous review resulted in a recommendation that plaintiff reduce his custody score. (Id. at 6-7.) Plaintiff claims that Cate and his agents retaliated against him in this way for "filing legal complaints in the state courts against Cate[ ] and his agents." (Id. at 7.)

Plaintiff also requests injunctive relief "enjoining defendant from retaining plaintiff [in] 4-level custody on faulty classification points" and monetary damages. (Id. at 3.)

When the allegations of the complaint are construed liberally in a light most favorable to plaintiff, the court finds that plaintiff is attempting to allege the following claims against defendant Director Cate: (1) a due process claim under the Fourteenth Amendment, (2) a retaliation claim under the First Amendment, (3) a denial of the n access to the courts claim under

the First and Fourteenth Amendments, (4) a claim for deliberate indifference under the Eighth Amendment, and (5) claims for violations of various prison regulations. The court will address each of the claims plaintiff is attempting to allege below.

A. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A claim for violation of "procedural" due process has two components. A litigant must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989). Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Next, he must allege facts sufficient to show that show that the procedures attendant upon the deprivation were not constitutionally sufficient. Id. The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481–84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Plaintiff has not adequately alleged in his complaint that his purportedly erroneous classification as a level-four inmate has subjected him to conditions constituting an "atypical and significant" hardship. The complaint alleges plaintiff is being "held under conditions which deny family and friend visitation" as a result of his faulty classification score and that his score has been used to "obstruct plaintiff from receiving work times [sic] credits." (Complaint at 4.) However, nothing in plaintiff's complaint suggests the circumstances or conditions of confinement as a level-four inmate constituted an atypical and significant hardship relative to plaintiff's sentence and prison life. Moreover, plaintiff does not make any allegations regarding what process he received in connection with his classification score or what, if any, deficiencies there may have been in the process provided. Accordingly, plaintiff's allegations are insufficient

to state a cognizable due process claim under the Fourteenth Amendment.

Moreover, to the extent that plaintiff attempts to base his claim on defendant Director Cate's alleged denial of his inmate grievance in which plaintiff claimed that he had been subject to an earlier retaliatory transfer, such a claim is unavailing.  "Prisoners have no stand-alone due process rights related to the administrative grievance process."  Dixon v. LaRosa, 2:10-CV-1441 GEB KJN, 2011 WL 3875806 (E.D. Cal. Aug. 31, 2011).  See also Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  In other words, federal law does not require prison officials to process inmate grievances in a particular manner or respond to them favorably.  Since inmates do not have a constitutional right to a particular grievance process, "plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process grievances." Dixon, 2011 WL 3875806 at *16.  See, e.g., Wright v. Shannon, No. 1:05-cv-1485-LJO-YNP PC, 62010 WL 445203, at *5 (E. D. Cal. Feb.2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No.1:09-cv-0468-OWW-YNP-PC, 2009 WL 3789597, at *6 (E. D. Cal. Nov.10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

B.  Retaliation

Prison officials generally cannot retaliate against inmates for exercising First Amendment rights.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  "Among those rights is the right to file prison grievances and the right to pursue civil rights litigation in the federal courts."  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011) (citing Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005)).  In order to bring a claim for retaliation, a plaintiff must allege the existence of five elements:  (1) that the retaliated-against conduct is protected; (2) that the defendant took adverse action against plaintiff; (3) that there exists a causal connection between the defendant's retaliatory action and plaintiff's protected conduct; (4) that the defendant's actions would chill an ordinary person's exercise of his First Amendment rights; and (5) that the defendant's action did

not reasonably advance a legitimate correctional goal. Watison, 668 F.3d at 1114. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Id. Here, plaintiff does not allege in his complaint facts that if proven would show that defendant Director Cate's alleged actions did not reasonably advance a legitimate correctional goal. Accordingly, the complaint's allegations are insufficient to state a claim for retaliation under the First Amendment against Cate.

C. Access to the Courts

Prisoners have a constitutional right to meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 824-25 (1977). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. Within this right to access the courts is the right for prisoners to prepare legal documents without active interference from prison officials. Id. at 350; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials."). To claim a violation of this right, a plaintiff must also allege facts showing that he has suffered an actual injury as a result of the alleged interference. Lewis, 518 U.S. at 350. In other words, a plaintiff asserting such a claim must be able to show that the deprivation has directly impacted the relevant litigation in a manner adverse to him. Id. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.").

Here, the following is the only allegation plaintiff makes that is directly relevant to a claim based on interference with his right to access the courts: "[u]nder 4-level custody, plaintiff cannot met Court deadlines, which causes judges denials [sic] of lawsuits . . . ." (Complaint at 3.) Plaintiff's allegations, when taken as true, show that Cate's refusal to change plaintiff's custody score led to his plaintiff being classified as a level-four inmate instead of a lower-level classification. However, plaintiff's conclusory allegations do not show that Cate *actively*

interfered with plaintiff's ability to meet the court deadlines he allegedly missed, as is required to state a cognizable denial of access to the courts claim based on a theory of interference. Silva, 658 F.3d at 1103. Rather, plaintiff merely alleges that he cannot meet his court deadlines while under level four custody and fails to allege facts even suggesting that this purported inability to meet court deadlines was specifically caused by defendant Cate's alleged actions. Furthermore, plaintiff fails to allege any facts showing that he would have been able to meet these deadlines if he had been re-classified as a level three or lower inmate. Therefore, plaintiff's allegations fail to show how the alleged deprivation had caused impairment to his ability to litigate his cases. Lewis, 518 U.S. at 348. Consequently, the facts alleged in the complaint are insufficient to state a cognizable denial of access to the courts claim.

D. Deliberate Indifference

Plaintiff also alleges that he "suffers high blood discease [sic], and other injury which he received under inhumane condiction [sic] complained of" in violation of the Eighth Amendment. (ECF No. 1 at 4.) Construed liberally, it appears that plaintiff attempts to assert a claim that the defendant was deliberately indifferent to a serious medical need of plaintiff's. However, plaintiff fails to affirmatively link Cate to this allegation in his complaint. Moreover, such vague and conclusory allegations are insufficient to allege a claim under the Eighth Amendment. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) ("[V]ague and conclusory allegations of official participation in civil rights violations are not sufficient.") Accordingly, petitioner's allegations are insufficient to state a cognizable n Eighth Amendment deliberate indifference claim against Cate.

E. Violations of Prison Regulations

To the extent that plaintiff attempts to bring any claims solely based on defendants' violation of prison rules and policies, such claims must be dismissed. There exists no independent cause of action under § 1983 for a violation of California's Title 15 regulations. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified Sch.

Dist., 90 F.3d 367, 370 (9th Cir. 1996)). See also Davis v. Kissinger, No. CIV S–04–0878 GEB DAD P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009); (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).

F. Conclusion

For the foregoing reasons, the complaint's allegations are insufficient to state a cognizable cause of action under § 1983. Consequently, the complaint must be dismissed. Nevertheless, the court cannot find it beyond question that the defects in plaintiff's complaint with respect to his retaliation claim could not be cured by amendment. Accordingly, the court will grant plaintiff leave to file an amended complaint.

If plaintiff chooses to file an amended complaint, plaintiff must allege therein facts demonstrating how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, any amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff will be required to file his amended complaint on the form provided with this order. In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

/////

IV. Plaintiff's Motion to Have the United States Marshal Provide Service of Process

Also before the court is plaintiff's August 22, 2013 motion requesting that the court issue an order directing service of summons and the complaint on defendant Director Cate by the United States Marshal. (ECF No. 5.) This motion will be denied. For the reasons set forth above, plaintiff's complaint is being dismissed for failure to state a claim upon which relief can be granted. The denial of plaintiff's motion is without prejudice to any future requests to have the United States Marshal effect the service of any future amended complaint in this action that states a cognizable claim.

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a. The completed Notice of Amendment; and

b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall be on the form provided with this order and shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

5. The Clerk of the Court is directed to send plaintiff the court's form complaint for a civil rights action pursuant to 42 U.S.C. § 1983 and accompanying instructions.

 6. Plaintiff's August 22, 2013 motion for an order permitting summons and complaint served by the United States Marshal (ECF No. 5) is denied.

Dated: January 13, 2014

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Dad1.civilrights
Mage0120.1.docx

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUCHELL MAGEE,

Plaintiff,

v.

MATTHEW CATE,

Defendant.

No. 2:13-cv-00120-DAD

NOTICE OF AMENDMENT

Plaintiff hereby submits the following document in compliance with the court's order filed ______________________:

____________________ Amended Complaint

DATED:

_________________________________

Plaintiff